**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **JANE DOE, a minor, by her parents and next friends JOHN DOE and JUDY DOE, JOHN DOE, in his individual capacity and JUDY DOE, in her individual capacity,**　　　　　) ) ) ) ) ) | |
| **Plaintiffs,**　　　　) ) | |
| **v.**　　　　) ) | **Case No. 3:22-cv-00560** <br> **Judge Aleta A. Trauger** |
| **ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., and UNITED STATES FENCING ASSOCIATION,**　　　　) ) ) ) ) | |
| **Defendants.**　　　　) | |

## MEMORANDUM

The plaintiffs, Jane Doe and her parents,[1] bring suit against defendants Robert Piraino,

Music City Fencing Club, Inc. ("MCFC") (collectively with Piraino, "the Music City defendants"),

and the United States Fencing Association ("USA Fencing"), asserting claims arising from

Piraino's sexual abuse of Jane Doe while she was a minor and he was her fencing coach. Before

the court are (1) USA Fencing's Motion to Compel Arbitration and Stay Litigation (Doc. No. 72);

and (2) the Music City defendants' Joinder in [USA Fencing's] Motion to Compel Arbitration

(Doc. No. 75), which the court construes as a motion to compel arbitration of the claims against

those defendants. For the reasons set forth herein, both motions will be denied.

---

[1] Jane Doe was sixteen years old when this lawsuit was filed. (Doc. No. 1 ¶ 2.) It is unclear when exactly she reached the age of majority, but in the November 21, 2023 Declaration she filed in connection with the plaintiffs' opposition to the Motion to Compel, she confirms that she is now over the age of 18. (Doc. No. 92-1 ¶ 1.)

# I. PROCEDURAL HISTORY

Jane Doe alleges that she suffered sexual abuse from Piraino, her fencing coach, while she was a member of MCFC. Piraino is the owner, principal, and former head coach of MCFC. MCFC is a Tennessee corporation whose principal place of business is in Nashville. USA Fencing, a not-for-profit corporation based in Colorado Springs, Colorado, is the national governing body for the sport of fencing in the United States. (Doc. No. 36 ¶¶ 5–7.) The plaintiffs, Jane Doe and her parents, filed suit against all three defendants on July 27, 2022, asserting claims against the various defendants for intentional and negligent infliction of emotional distress, assault and battery, negligence, negligence *per se*, violation of 18 U.S.C. §§ 1591(a), 1594(a), and 1589(a), and violation of federal child pornography laws. (Doc. No. 1.) After the Music City defendants were served but before any defendant had entered an appearance, the plaintiffs filed a Motion to Stay, pending the resolution of criminal proceedings against Piraino. (Doc. No. 10.) They also filed a motion to permit them to proceed pseudonymously. (Doc. No. 13.) The court granted both motions the same day, and the initial case management conference was cancelled due to the stay. (Doc. Nos. 16, 17.) USA Fencing filed a waiver of service a few days later. (Doc. No. 18.) The plaintiffs asked the court to lift the stay in mid-December 2022. (Doc. No. 23.) The court promptly granted the motion and reset the initial case management conference for February 13, 2023. (Doc. No. 24.)

The plaintiffs alleged in the original Complaint that the lawsuit against USA Fencing "arises out of and relates to" USA Fencing's contacts in Tennessee, because her claims "involve[d] the sexual abuse of a Tennessee resident in the course of her participation in fencing activities in Tennessee as a member of USA Fencing." (Doc. No. 1 ¶ 12.) The original Complaint alleged that USA Fencing is responsible for,

> among other things, promoting the sport of fencing in the United States, determining the standards by which athletes will be chosen to represent the U.S. in international competition, maintaining a national membership system for students, coaches, referees, and other members of the fencing community, and creating a common set of rules and policies that govern members and clubs when participating in fencing-related activities.

(*Id.* ¶ 15.)

USA Fencing filed a Motion to Dismiss the claims against it in the original Complaint under Rule 12(b)(6) on February 3, 2023, arguing that the original Complaint failed to allege sufficient facts to establish a negligence claim against USA Fencing; that Jane Doe's claim of negligent infliction of emotional distress was duplicative of her negligence claim and also unsupported by the factual allegations in the Complaint; and that her claims for violations of 18 U.S.C. §§ 1589(a), 1591(a), and 1594(a) failed to state facts to support such claims. (Doc. No. 26.) The Motion to Dismiss did not reference arbitration or the possibility that the plaintiffs' claims were the subject of an arbitration agreement.

While that motion was pending, in anticipation of the initial case management conference, the parties filed a joint proposed Initial Case Management Order on February 8, 2023. (Doc. No. 29.) As set forth therein, USA Fencing's theory of the case was that it did not breach any duty to Jane Doe or her parents, was never on notice of Piraino's abuse of any minor athletes until he was arrested, and that there is no legal basis for imputing Piraino's wrongdoing to USA Fencing. (Doc. No. 29, at 2–3.) The proposed Initial Case Management Order noted that the Music City defendants were in default, not having retained an attorney or entered an appearance in the case, and that they had not participated in initial case management discussions. (*Id.* at 3.)[2] Under "Issues Resolved," the parties "agree[d] that the Court has jurisdiction over this action and that venue is appropriate."

---

[2] Counsel for the Music City defendants entered an appearance the following day, on February 9, 2023. (Doc. No. 31.)

(*Id.* at 4.) Under "Issues in Dispute," the parties noted that USA Fencing had filed a Motion to Dismiss and that the parties disputed discovery deadlines. (*Id.*) The proposed Initial Case Management Order, drafted in collaboration between counsel for the plaintiffs and counsel for USA Fencing, did not reference the existence or possible existence of an arbitration agreement.

That proposed order, in any event, was not entered, because the court continued the initial case management conference in light of the pending Motion to Dismiss. (Doc. No. 30.) The plaintiffs, rather than responding to the Motion to Dismiss, filed their Amended Complaint, attempting to address deficiencies identified in USA Fencing's motion. (Doc. No. 36.) Like the original, the Amended Complaint alleged that Jane Doe was a member of USA Fencing and added, further, that "[f]encers, coaches, and referees must be members of USA Fencing in order to compete or otherwise participate in USA Fencing-sanctioned tournaments, camps, and other events." (*Id.* ¶ 16.) The plaintiffs again asserted claims against Piraino and/or MCFC for intentional infliction of emotional distress, assault and battery, negligence, negligent supervision, and negligence *per se*; claims against USA Fencing for negligence, negligent supervision, and negligence *per se*; and claims against all defendants for violations of 18 U.S.C. §§ 1591(a), 1594(a), and 1589(a).

The court denied as moot the pending Motion to Dismiss, given the amended pleading, and set a new date for the initial case management conference. However, in March 2023, USA Fencing filed a Motion to Dismiss the Amended Complaint, along with a Motion to Strike Portions of the First Amended Complaint[3] (Doc. Nos. 43, 44), so the court again continued the initial case management conference. USA Fencing's Motion to Dismiss the Amended Complaint again sought

---

[3] The Motion to Strike objected to the inclusion in the pleading of allegations regarding USA Fencing's revenues, the availability of liability insurance, and other matters.

dismissal of the claims against it on the merits, for failure to state a claim for which relief may be granted; it did not allude to the possible existence of an arbitration agreement. (Doc. No. 44.) The Music City defendants filed their own Motion to Dismiss and Motion to Strike Portions of the Amended Complaint (Doc. No. 41) and also joined in USA Fencing's motions (Doc. Nos. 45, 46). Their motions did not reference arbitration either.

In August 2023, the court granted in part both Motions to Dismiss, dismissing the negligence *per se* claims against both USA Fencing and MCFC and the claim under 18 U.S.C. § 1595(a) as to USA Fencing, but otherwise denying the motions. The court denied in its entirety USA Fencing's Motion to Strike and granted in part the Music City defendants' Motion to Strike, striking one paragraph pertaining to past acts by Piraino. The court also reset the initial case management conference for September 25, 2023. (Doc. No. 62.)

USA Fencing filed its Answer to the Amended Complaint on September 1, 2023, just over a year after having received notice of the lawsuit. (Doc. No. 64.) In the introductory paragraph of the Answer, USA Fencing asserts that it is answering the Amended Complaint "without waiving its right to demand or compel arbitration pursuant to the Membership Waiver form." (*Id.* at 1.) In a footnote, it states: "A USA Fencing Membership Waiver is signed by members on an annual basis. On information and belief, per Fed. R. Civ. P[.] 11(b)(3), Plaintiff Jane Doe was a USA Fencing member and, consequently, her parents would have had to sign the Membership Waiver on her behalf to become a USA Fencing member and renew her membership each year. However, Plaintiffs have not yet confirmed or disclosed their true identities." (*Id.* at 1 n1.) As its first Affirmative Defense, USA Fencing further stated:

236. When an individual joins or renews membership with USA Fencing, a Membership Waiver is signed. On information and belief, per Fed. R. Civ. Proc. 11(b)(3), as alleged in the First Amended Complaint Plaintiff Jane Doe was a USA Fencing member and her parents would have had to sign the Membership Waiver on her behalf to enable her to become a USA Fencing member and renew her membership annually. However, Plaintiffs are proceeding pseudonymously and their identities have not yet been confirmed or disclosed.

237. The member waiver includes an arbitration provision, which is applicable to the claims alleged in this lawsuit. USA Fencing demands that this matter proceed via arbitration attendant to the terms of the Membership Waiver.

(Doc. No. 64 ¶¶ 236–37.)

The Music City defendants, without actually asserting that the claims against them are covered by an arbitration agreement, responded to the plaintiffs' allegations that jurisdiction and venue in this court are proper by stating that they contest subject matter jurisdiction and venue "for purposes of this action to the extent that a valid and enforceable arbitration provision associated with Plaintiffs' claims was executed by Plaintiffs." (Doc. No. 63 ¶¶ 8–10, 13.)

On September 20, 2023, the plaintiffs filed a proposed Protective Order, which anticipated the disclosure of Jane Doe's identity and personally identifying information to the defendants and provided the procedure the parties were to follow to maintain the confidentiality of that information. (Doc. No. 65.) The same day, the parties filed an initial joint proposed amended Initial Case Management Order in which, under "Issues in Dispute," the defendants stated:

As an initial matter, the parties dispute whether they should be compelled to arbitrate the disputes currently pending before the Court in this matter. As of the date of this filing, Plaintiffs have yet to confirm the identity of Jane Doe, John Doe, and Judy Doe. While the identities of Jane Doe, John Doe, and Judy Doe have yet to be confirmed, Defendant USA Fencing has reason to believe that a Membership Waiver containing an arbitration provision was likely signed by Plaintiffs.

(Doc. No. 66, at 4.)

In the same proposed Order, the plaintiffs objected that

Defendants raised the issue of arbitration for the first time on September 1, 2023, when they filed their answers. . . .

Plaintiffs contend that Defendants have waived any right to compel arbitration by participating in settlement negotiations and then litigating this matter for nearly two years [sic] without even mentioning arbitration as a possibility to Plaintiffs or the Court. Plaintiffs further allege that any agreement to arbitrate this dispute would be unenforceable for many reasons, including the fact that Jane Doe would have been a minor at the time any such agreement would have been presented to her or her parents. . . .

Plaintiffs believe that Defendants already know Jane Doe's identity.

(*Id.* at 4–5.)

In the remaining sections of that proposed Initial Case Management Order, the parties set forth proposed deadlines for conducting discovery, disclosing experts, mediating their dispute, filing dispositive motions, and estimated that trial would last two weeks. The initial case management conference took place on September 25, 2023, after which a modified proposed Case Management Order was filed on September 27, 2023 (Doc. No. 70), and this version was entered by the court (Doc. No. 71). In this version, the plaintiffs' objection to arbitration was somewhat truncated, stating only that the plaintiffs "have reserved their right to assert any defense to compelled arbitration, including that Defendants have waived their right to compel arbitration by failing to raise the issue at any time before September 1, 2023, when they filed their answers." (*See* Doc. Nos. 70 & 71, at 4.)

On October 18, 2023, USA Fencing filed its formal Motion to Compel Arbitration, supporting Memorandum of Law, and the Declaration of Christina Pachuta. (Doc. Nos. 72, 72-1, 72-2.) On October 20, 2023, Piraino and MCFC "join[ed], adopt[ed], and incorporate[d] by reference" USA Fencing's Motion to Compel Arbitration, "to the extent applicable," but also sought in their own right to compel arbitration "of all matters in controversy." (Doc. No. 75, at 1.)

The plaintiffs filed a Response to USA Fencing's Motion to Compel Arbitration (Doc. No. 80), arguing that the defendants waived any right to pursue arbitration of this matter. Their Response is supported by fifteen exhibits documenting the history of the parties' interactions since the original Complaint was filed. (Doc. Nos. 82-1 through -15.) The defendants filed Reply briefs and their own supporting Declarations. (Doc. Nos. 85, 85-1, 86, 86-1.) The plaintiffs, with permission, filed a Sur-Reply to each (Doc. Nos. 91, 92), and the defendants, with permission, filed Replies to the Sur-Replies (Doc. Nos. 94, 95).

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added). The FAA provides that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Under 9 U.S.C. § 3, when a court in which a suit is pending is "satisfied" that such suit is "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

At issue here is whether the party (or parties) seeking arbitration are "in default in proceeding with such arbitration"—but the standard to be applied to the question of whether a party is "in default" or has waived the right to rely upon an otherwise enforceable arbitration provision is presently somewhat unresolved. In 2022, the Supreme Court was called upon to

review the waiver standard applied under Eighth Circuit law. The Supreme Court noted that most of the federal appellate courts considering whether a party has waived arbitration by litigating in court for too long before requesting arbitration have applied to that question "a rule of waiver specific to the arbitration context." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022). More specifically, many courts have held in this context that "[a] party can waive its arbitration right by litigating only when its conduct has prejudiced the other side"—even though, under ordinary circumstances, "a federal court deciding whether a litigant has waived a right does not ask if its actions caused harm." *Id.* at 413–14. The Supreme Court observed that this "special rule" has derived from the federal court's understanding of the FAA as embracing a "policy favoring arbitration." *Id.* at 414. In *Morgan*, the Supreme Court held, simply, that the FAA does not "authorize[] federal courts to create such an arbitration-specific rule." *Id.*

That is, the Court held that the FAA does not embrace a policy favoring arbitration agreements over other types of agreements. Instead, the FAA's policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Id.* at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.*

The Court did not, however, go so far as to identify what rule or standard should apply to the question of waiver.[4] Instead, it noted that the federal courts "have generally resolved cases like this one as a matter of federal law, using the terminology of waiver," and the Court "assume[d]

---

[4] The Court noted that the parties' briefs reflected their disagreements "about the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" and about "whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness," but the Court did not address these issues. *Morgan*, 596 U.S. at 416.

without deciding" that "they are right to do so." *Id.* at 416–17. And, because federal courts have generally defined waiver outside the arbitration context as the "'intentional relinquishment or abandonment of a known right,'" focusing solely "on the actions of the person who held the right" without considering "the effects of those actions on the opposing party," they should not apply a different rule to arbitration agreements. *Id.* at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

The Sixth Circuit has not directly reconsidered the question of waiver post-*Morgan*. Pre-*Morgan*, it had held that "[a] party implicitly waives its arbitration right . . . when (1) the party's acts are 'completely inconsistent' with its arbitration right and (2) the party's conduct is prejudicial to an opposing party—for example, when the party significantly delays asserting its arbitration right." *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494 (6th Cir. 2020) (citing *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827–28 (6th Cir. 2015); *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010)). *Morgan* clearly invalidated the second of these elements. It remains unclear whether the first is still applicable or whether it, too, was derived to apply solely to arbitration waiver and not waiver generally.[5] However, following the trail of citations in support of this standard back through time, it becomes apparent that, while the second prong is of fairly recent vintage, the first dates to an era before arbitration agreements were granted markedly favored status by the federal courts. For instance, in *Germany v. River Terminal Ry. Co.*,

---

[5] The Sixth Circuit recently affirmed the denial of a motion to compel arbitration, in *Schwebke v. United Wholesale Mortgage LLC*, No. 23-1507, 2024 WL 1298149 (6th Cir. Mar. 27, 2024). There, the appellate court noted that, "[a]t a minimum, *Morgan* eliminated the prejudice requirement," but it had no need to "decide whether *Morgan* did more than that because the parties agree that, once stripped of its prejudice requirement, [the Sixth Circuit's] pre-*Morgan* caselaw remains intact." *Id.* at *3. Accordingly, the court "assume[d] without deciding that our precedent asking whether a party's actions are 'completely inconsistent' with reliance on arbitration survives *Morgan*." *Id.*

477 F.2d 546, 547 (6th Cir. 1973) (per curiam), the court held that an "agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon," without referencing prejudice, and citing *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405 (5th Cir. 1971). *Burton-Dixie* expressly acknowledged that "agreements to submit disputes to architects or to arbitrators, just like any other contract terms, may be waived." *Burton-Dixie Corp.*, 436 F.2d at 407. And *Burton* cited for that proposition, among other cases, *American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316 (6th Cir. 1950), which also reaffirmed that the contractual right to arbitrate could be waived while noting that the "generally recognized definition [of] waiver is an intentional relinquishment of a known right." *Id.* at 318.

In other words, courts have long accepted that arbitration, like any other contract term, can be waived and that waiver is defined as the intentional relinquishment of a known right. The "completely inconsistent" language used by courts in the arbitration context appears simply to be the formulation of the test for determining whether, in fact, a party has waived a contract right. Tennessee law, in that regard, is not inconsistent with federal law, or in any event does not appear to apply a less demanding standard, insofar as it, too, defines waiver as "the intentional, voluntary relinquishment of a known right" and has generally required "clear, unequivocal and decisive acts of the party" to demonstrate it. *Collins v. Summers Hardware & Supply Co.*, 88 S.W.3d 192, 201–02 (Tenn. Ct. App. 2002) (quoting *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969)).[6] Accordingly, *Morgan* having instructed that prejudice is no longer a

---

[6] To complicate matters somewhat, the Tennessee Court of Appeals has also acknowledged that this definition of waiver has been "criticized as oversimplified and apt to lead to misconception." G*uestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 201 (Tenn. Ct. App. 2010) (citing Restatement(2d) of Contracts § 84 cmt. b (1981) (referring to this definition of waiver as "inexacting")). As the court noted there, "[i]n reality, many, if not most waivers are unintentional and frequently do not involve a 'right' that the party is aware of." *Id.* In addition, "contractual *rights* are not waivable, *conditions* are." *Id.* (emphasis in the original) (citation

factor in the waiver analysis, this court believes that the Sixth Circuit, when faced with re-establishing the standard to be applied to the question of whether a party has waived its right to enforce an arbitration provision, will apply a test with just one prong, asking whether the party's conduct is completely inconsistent with its arbitration rights.[7]

The court acknowledges the possibility that the Sixth Circuit might expressly adopt a state-law standard, as state contract law has generally been held to inform the interpretation of arbitration agreements. *See, e.g.*, *AtriCure, Inc. v. Meng*, 12 F.4th 516, 522 (6th Cir. 2021) (noting that courts generally "start[] with a presumption that an arbitration agreement is governed by the contract law of the state whose laws otherwise apply to it" (citations omitted)). However, because the federal and state definitions of waiver and the method for determining it appear to be very similar, it is not

---

omitted). "Thus, the definition of waiver as 'a voluntary relinquishment by a party of a known right' applies to a waiver of the right to enforce a provision in a contract . . . ." *Id.* at 201 (citations omitted).

[7] Most district courts within the Sixth Circuit have applied such a one-factor test following *Morgan. See, e.g.*, *Sevier Cty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, No. 3:19-cv-138, 2022 WL 19403610, at *8 (E.D. Tenn. Sept. 15, 2022). However, in *Lee Construction, LLC v. Bratton,* No. 1:22-cv-196, 2023 WL 5805848 (E.D. Tenn. July 28, 2023), the court concluded that the "completely inconsistent" prong "appears to be the very kind of 'special, arbitration-preferring procedural rule[]' that *Morgan* prohibits" and, therefore, that "*Morgan* invalidates both parts of the Sixth Circuit's two-part waiver test." *Id.* at *1. The court instead applied "the general federal rule of waiver as it would with any other contractual provision." *Id.* The plaintiff in *Lee Construction*, however, had filed suit in state court and did not move to compel arbitration until after the defendant removed the case to federal court and filed an answer and counterclaim. *Id.* at *2. The court found that Tennessee's general standard (defining waiver as the "intentional, voluntary relinquishment of a known right" as demonstrated by "clear, unequivocal and decisive acts of the party") supplied the appropriate test and, under that standard, that "one could hardly dispute that by filing the Complaint, which seeks relief on the merits and makes no mention of arbitration, Plaintiff demonstrated a clear and unequivocal intent to disregard the arbitration agreement and to resolve this action in a judicial forum." *Id.* at *4. Although the caselaw is admittedly equivocal, this court is not persuaded that the "completely inconsistent" test would have yielded a different result in that case.

clear that characterizing the test as based on state law as opposed to federal law would significantly change the outcome.[8]

Waiver, under state law at least, is a question of fact, with the burden of proof on the party asserting it. *Rivers v. Brooks*, No. E2023-00506-COA-R3-CV, 2024 WL 492114, at *4 (Tenn. Ct. App. Feb. 8, 2024) (quoting *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003)).

## III.  DISCUSSION

### A.  USA Fencing's Motion to Compel Arbitration

#### 1.  *The Parties' Arguments*

In its Motion to Compel Arbitration and incorporated Memorandum (Doc. No. 72-1), USA Fencing asserts that (1) the plaintiffs' claims against USA Fencing arise from Jane Doe's membership in USA Fencing; (2) Jane Doe annually renewed her membership in USA Fencing each year that she participated in fencing, executing, through her parents, a "Membership Waiver" that contains an arbitration clause stating that any claim or controversy arising from or relating to Jane Doe's membership or participation in USA Fencing would be resolved by arbitration under the Commercial Rules of the American Arbitration Association ("AAA"); (3) the AAA's Commercial Rules provide that issues of arbitrability are reserved to the arbitrator; and (4) the court should compel arbitration in light of the existence of a binding, valid agreement containing

---

[8] The defendants do not propose a standard, other than by asserting that no waiver occurred in this case. The plaintiffs assert that the court "does not need to decide precisely which is the correct approach, because any approach that complies with the Supreme Court's direction in *Morgan* not to apply special, arbitration-favoring rules would lead to the conclusion that USA Fencing has waived its arbitration rights." (Doc. No. 80, at 15.)

an arbitration provision. It requests that the court stay this case pending the conclusion of arbitration. (*Id.* at 16.)[9]

The plaintiffs do not, at this juncture, dispute the validity of the Membership Waiver incorporating an arbitration clause.[10] Instead, their Response to USA Fencing's Motion to Compel is that USA Fencing waived its right to enforce the arbitration clause in the Membership Waiver by acting in a manner completely inconsistent with an intention to enforce arbitration, first by engaging in settlement discussions for a year and then by substantively litigating the case for nearly a year before ever raising the issue of arbitration. (Doc. No. 80.)

The plaintiffs, attempting to anticipate USA Fencing's possible counter-arguments, also assert that the question of waiver is a matter for the court to decide and that any claim by USA Fencing that it could not seek arbitration until it had confirmed Jane Doe's identity in September

---

[9] The court uses the page numbers assigned by the court's electronic filing system. Because USA Fencing's documents nearly all contain an (unnecessary) cover page as well as a table of contents, the page numbers used by USA Fencing are not consistent with those assigned by CM/ECF.

[10] Notably, the plaintiffs do not dispute the contention that they signed the Membership Waiver; nor do they, at this juncture, contest its enforceability, tacitly acknowledging that, if the defendants survive the threshold waiver issue, the question of the enforceability of the Membership Waiver as a whole and the arbitration clause within—including a claim that the agreement is void based on Jane Doe's status as a minor at the time of contracting—would be for the arbitrator to decide. *Accord, e.g.*, *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 584 (M.D. Tenn. 2020) (finding that the plaintiffs' claim that an agreement containing an arbitration clause was void based the plaintiff's minority at the time of contracting to be a question of arbitrability that had to be referred to the arbitrator). Jane Doe, therefore, has not waived the ability to seek either to repudiate the Membership Waiver altogether or to contest its enforceability on the basis of the doctrine of infancy under Tennessee law. What this likely means as a practical matter is that, even if the defendants were entitled to invoke the arbitration agreement, the arbitrator would likely find that a liability waiver and arbitration agreement signed by a parent on behalf of a minor is voidable under the doctrine of infancy, at the minor's option, which would require the case to be sent back to federal court. *See, e.g.*, *Harwell Motor Co. v. Cunningham*, 337 S.W.2d 765, 767 (Tenn. Ct. App. 1959) ("[C]ontracts of a minor, unless for necessaries, . . . are voidable by the minor at his election upon attaining majority."); *see also Woodman ex rel. Woodman v. Kera LLC*, 785 N.W.2d 1, 5 (Mich. 2010) ("[A] guardian, including a parent, cannot contractually bind his minor ward.").

2023 would be frivolous, both because it already knew her identity or easily could have confirmed it and because USA Fencing's Answer, filed before it had confirmed Jane Doe's identity, raised the probable existence of an arbitration agreement as an affirmative defense, based solely on the undisputed fact that Jane Doe was a member of USA Fencing and therefore had almost certainly signed a Membership Waiver with an arbitration provision. In other words, the plaintiffs argue, USA Fencing's Answer establishes that it did not need to confirm Jane Doe's identity to preserve its right to enforce the arbitration clause.

USA Fencing's Reply, indeed, asserts that it could not have waived its right to enforce the arbitration clause, because it did not positively confirm Jane Doe's identity until September 21, 2023. (Doc. No. 86, at 2.) It accuses the plaintiffs of "gamesmanship" and failing to "accept responsibility for refusing to provide salient, elemental information—Plaintiffs' identities"—and then claiming that USA Fencing is at fault for not knowing their identities. (*Id.*) It emphasizes that it does not understand how it could have filed a motion to compel arbitration without knowing Jane Doe's identity, which was, it claims, what allowed them ultimately to track down her Membership Waivers and confirm that she had agreed to arbitration. (*See id.* at 3; *see also* Doc. No. 86-1, Johnson Decl. ¶ 9 ("A Motion to Compel Arbitration could not have been filed until such time as we had confirmation of Jane Doe's identity and were in receipt of her USA Fencing membership agreements.").) As mentioned above, USA Fencing does not address the legal standard for assessing waiver, nor does it contest the plaintiffs' assertion that the court must determine the question of waiver.[11]

---

[11] USA Fencing does object to the plaintiffs' filing as exhibits to their Response "confidential pre-suit settlement communications" that USA Fencing maintains are "inappropriate, inconsistent with Federal Rules of Evidence 408, and should be stricken . . . pursuant to Federal Rule of Civil Procedure 12(f)." (Doc. No. 86, at 3.) The plaintiffs respond that these exhibits do not implicate Rule 408, because they were provided to demonstrate that USA Fencing had

The plaintiffs filed a Sur-Reply (Doc. No. 91) to USA Fencing's Reply, in which they again assert, first, that USA Fencing's actual knowledge of Jane Doe's identity is irrelevant, because (1) there is no dispute that it has known all along that she was a USA Fencing member (in November 2021, she provided USA Fencing a redacted copy of her membership card, showing all but her name and the last few digits of her membership number, and she alleged membership in the original and Amended Complaints); (2) USA Fencing knew that all members sign Membership waivers when they join or renew membership with USA Fencing, as stated in its Answer (*see* Doc. No. 64 ¶ 236); and (3) despite purportedly not having confirmed Jane Doe's identity as of September 1, 2023, it had no problem raising arbitration in its Answer or in its contemporaneous email demand for arbitration based on that information alone. As the email arbitration demand stated:

> Please allow this to serve as our demand for arbitration. You have not yet confirmed the identity of Plaintiffs, and our surmise or conjecture of such is of no import. Generally, as I understand it, new members and renewing members sign a Member Waiver, which includes an arbitration provision. Membership renewal occurs on an annual basis. Assuming that Plaintiffs did so attendant to Jane Does' membership in USA Fencing, their claims would be subject to arbitration. Please confirm that you will stipulate to proceed with this matter in arbitration.

(Doc. No. 82-15.)

Second, the plaintiffs deny ever "refusing" to disclose Jane Doe's identity, pointing to correspondence from before they filed suit in which they offered to provide that information while

---

"sufficient knowledge and opportunity to assert its arbitration rights long before October 20, 2023, when it filed its Motion to Compel Arbitration." (Doc. No. 91, at 4.)

Rule 408 prohibits the use of settlement offers and statements made in the context of settlement discussions to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). The Rule expressly provides for the admission of such evidence "for another purpose, such as . . . negating a contention of undue delay," for example. Fed. R. Evid. 408(b). The plaintiffs clearly have not offered the statements for a purpose prohibited by Rule 408(a).

still protecting her confidentiality. (*See, e.g.*, Doc. No. 82-3 (Nov. 22, 2021 email from plaintiffs' counsel to defense counsel, noting that they had forwarded the "minor's redacted USA Fencing membership card" and asking, "Should you require further identification of the unnamed minor, please respond to us letting us know how we may provide that to you while protecting our client's confidentiality"); Doc. No. 82-8, at 9 (May 12, 2022 Settlement Demand Letter from plaintiffs' counsel to defense counsel, responding to USA Fencing's attorney's "complain[t] . . . that we have not identified our client or her parents" by stating, "There is more than enough information in the public domain for USA Fencing, given the membership information it already has in its files, to identify Jane Doe and her parents. Even assuming for the sake of argument that . . . USA Fencing could not figure out Jane Doe's identity, we have explicitly offered to provide this information . . . while protecting our client's confidentiality.").) They also point to the statement in the original Complaint and Amended Complaint, averring that the defendants "already know Doe's true identity. To the extent Defendants claim not to know Doe's true identity, Plaintiffs are willing to disclose her identity subject to a protective order." (Doc. No. 1 ¶ 2; Doc. No. 36 ¶ 2.)[12] And in the Memorandum in support of her Motion to Proceed Pseudonymously, the plaintiffs reiterated that they believed the defendants already knew Jane Doe's true identity, that they were willing to disclose it subject to a protective order if not, and that they were not seeking to withhold their identities from the defendants. (Doc. No. 14, at 3–4.)

Third, the plaintiffs point out that USA Fencing could have taken other steps to confirm Jane Doe's identity if it had really needed to do so, such as simply asking counsel for MCFC. Jane

---

[12] USA Fencing answered this paragraph of the Amended Complaint by averring that it was "without sufficient knowledge to form a belief as to the truth of the averments contained in paragraph 2" and denying that "Plaintiffs have confirmed or disclosed their true identities as alleged in paragraph 2." (Doc. No. 64 ¶ 2.)

Doe testified during Piraino's criminal proceedings, so Piraino and, by extension, MCFC have always known her identity. In addition, the plaintiffs point out that counsel for USA Fencing could have told the plaintiffs that USA Fencing needed to know Jane Doe's identity in order to verify whether she had signed an arbitration agreement, and, if she had then refused, it could have filed a motion to compel arbitration and for arbitration-related discovery early in the proceedings. (Doc. No. 91, at 2 (citing *Livingston v. Jay Livingston Music, Inc.*, No. 3:21-cv-00780, 2022 WL 4474159, at *3 (M.D. Tenn. Sept. 26, 2022) (Newbern, M.J.) (ordering discovery addressed to the existence of alleged arbitration agreements).) Finally, they point out that, when USA Fencing "explicitly asked Jane Doe to confirm her identity on August 28, 2023, Jane Doe cooperated with USA Fencing in drafting a protective order." (*Id.* at 3.)

USA Fencing filed a Reply to the plaintiffs' Sur-Reply in which it asserts that "[i]t defies logic that Plaintiffs would refuse to provide their identities" and that "pre-suit settlement negotiations could [never] constitute a waiver of the right to assert arbitration rights." (Doc. No. 94, at 3–4.) It also reiterates that, "[a]bsent confirmation of Plaintiffs' identities, USA Fencing was not able nor obligated to file a Motion to Compel Arbitration." (*Id.*)[13]

### 2. Did USA Fencing Waive Enforcement of Arbitration?

The question before the court, again, is whether USA Fencing has waived its right to enforce the arbitration clause in the Membership Waivers signed by Jane Doe or by Judy Doe on behalf of Jane Doe, by acting in a manner completely inconsistent with an intent to arbitrate. Although the defendants do not contest the court's authority to address this question, the court nonetheless notes that the Sixth Circuit has expressly held that "the court, not the arbitrator,

---

[13] USA Fencing also reprises it argument that the settlement negotiation letters filed by the plaintiffs as exhibits violate Rule 408 and should be stricken under Rule 12(f). The documents are filed under seal, and the court declines to strike them.

presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

While the Sixth Circuit has not "sharply define[d] what conduct suffices, it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate." *Id.* Because there is "no rigid rule as to what constitutes waiver of the right to arbitrate," the issue is "decided based on the circumstances of each particular case." *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000) (citing *St. Mary's Med. Ctr. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 588 (7th Cir.1992)). A non-exhaustive list of facts examined by courts in determining whether there has been a waiver of the right to arbitrate includes the degree of pretrial litigation, the length of delay before invoking arbitration, whether the parties have filed pretrial motions, whether the parties have litigated issues on the merits, and whether the parties have engaged in extensive discovery. *Reidy v. Cyberonics, Inc.*, No. 1:06-cv-249, 2007 WL 496679, at *5 (S.D. Ohio Feb. 8, 2007) (quoting *Konica Minolta Bus. Sols., U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 3827461, at *11 (S.D. Ohio Dec. 27, 2006)). Though each factor may be relevant to the inquiry, "waiver-through-conduct issues ordinarily turn on whether a [party] abused the litigation or pre-litigation process." *JPD*, 539 F.3d at 394 (citation omitted).

As the plaintiffs point out in this case, USA Fencing has had notice of Jane Doe's claims since August 2021, and it participated in settlement discussions for nearly a year without referencing an arbitration agreement. After negotiations stalled and the plaintiffs filed suit in July 2022, USA Fencing filed two Motions to Dismiss and a Motion to Strike, participated in the preparation of a proposed Case Management Order, and collaborated with plaintiffs' counsel in

trying to establish litigation deadlines, all without once mentioning the possibility of the existence of an arbitration agreement. It raised the issue for the first time on September 1, 2023, *after the court denied its Motion to Dismiss*, when it both filed an Answer to the Amended Complaint, invoking its right to arbitrate, and sent an email to plaintiffs' counsel demanding arbitration.

Based on these facts, the court finds that USA Fencing's conduct was completely inconsistent with an intention to arbitrate. It filed two dispositive motions going to the merits of the plaintiffs' claims and a motion to strike many of the allegations in the Amended Complaint, the resolution of which required a substantial investment in court time and resources. USA Fencing did not invoke an arbitration agreement until after the court had, for the most part, denied these motions—nearly a year after USA Fencing waived service of the Complaint and nine months after the lifting of the stay entered while criminal proceedings against Piraino were still pending. The claims it sought to have dismissed are the same claims it now contends are subject to arbitration. Although the parties did not engage in discovery, the Sixth Circuit has observed that seeking to have a case dismissed on the merits "is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." *Solo v. United Parcel Serv.*, 947 F.3d 968, 975 (6th Cir. 2020). "[T]he benefits of 'efficient and speedy' arbitration are lost if a party seeks arbitration only after insisting upon court process." *Id.* Thus, a party "may not use a motion to dismiss 'to see how the case [is] going in federal district court,' while holding arbitration in reserve for 'a second chance in another forum.'" *Id.* (quoting *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 463 (2d Cir. 1985), and *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 339 (6th Cir. 2010)). In addition, USA Fencing did not raise the issue in the initial proposed Case Management Order, where it agreed that there was no dispute as to venue or jurisdiction, when "completeness

would suggest" that it should have. *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 340 (3d Cir. 2023).

USA Fencing's objection to waiver is premised entirely on its contention that it could not have filed a motion to compel arbitration until after it had confirmed Jane Doe's identity and located the precise Membership Waivers she or her parents had executed. But this argument fails on at least two fronts. The first is that the filing of a motion to compel arbitration is not the only means by which a party may preserve its right to enforce an arbitration agreement. Typically, defendants may raise and preserve the right by asserting it as an affirmative defense in an answer. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) (observing that the answer is typically "the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff" and that "the intent to invoke arbitration is just such an issue"). Indeed, USA Fencing did raise the issue its Answer, but only after foregoing many other opportunities to put the plaintiffs on notice of this potentially dispositive issue. Arguably, for instance, it could have mentioned the existence of a possible arbitration agreement in its first or its second Motion to Dismiss, informing both the court and the plaintiffs that it believed the plaintiffs' claims were subject to arbitration but, because the plaintiffs had not revealed their identities, could not confirm that fact and therefore filed the Motion to Dismiss without waiving its right to arbitration. Failing that, it could have mentioned those same facts in its theory of the case or as an issue in dispute in the first proposed Case Management Order, filed shortly after its first Motion to Dismiss. It also could have simply asked counsel for the Music City defendants to confirm Jane Doe's identity. Or it could have sought an extension of the deadline for responding to the Complaint (and Amended Complaint) and requested arbitration-related discovery. It could have informed the plaintiffs that it believed their claims were subject to arbitration and needed their

identities to confirm its suspicions. But USA Fencing did none of those things. It waited instead until the court denied its Motion to Dismiss all of the claims against it in the Amended Complaint to mention arbitration.

Second, even assuming that it did not have an obligation to take such affirmative steps to learn or confirm the plaintiffs' identity, USA Fencing's contention that its hands were tied by the plaintiffs' purported refusal to disclose their identity is disproved by its own actions in this case. It raised the issue of arbitration in its Answer and sent the plaintiffs an email demanding arbitration on September 1, 2023, nearly a month before actually confirming the plaintiffs' identities. In other words, it clearly did not need to know Jane Doe's identity to invoke arbitration. The record, to the contrary, establishes that it knew that *every* new and renewing member signed a Membership Waiver with an arbitration clause (*see* Doc. Nos. 64, 82-15) and knew no later than November 2021 (*see* Doc. Nos. 82-4, 82-5) that Jane Doe was a member of USA Fencing. It therefore was in possession of all the information it needed to invoke arbitration at the time the plaintiffs filed suit. It nonetheless failed to take action on this knowledge for another year. By doing so, it waived its right to invoke arbitration. *Accord White*, 61 F.4th at 341 ("Contrary to Samsung's contention, a motion to compel arbitration—or at the very least notice of an intent to seek arbitration—would not have been 'futile,'" early in the litigation, given that it had the Model Numbers for the plaintiffs' televisions and therefore "should have been aware . . . that the plaintiffs had agreed to arbitrate their claims").

USA Fencing's Motion to Compel Arbitration, therefore, will be denied.

## B.     The Music City Defendants' Joinder in USA Fencing's Motion

### *1.     The Parties' Arguments*

The Music City defendants filed a document entitled "Joinder in [USA Fencing's] Motion to Compel," in which they expressly "join, adopt, and incorporate by reference" USA Fencing's

motion, "to the extent applicable." (Doc. No. 75, at 1.) In addition, however, the Music City defendants state that they "similarly move the Court to compel arbitration, and stay or dismiss this action, until the arbitration of all matters in controversy has been effected consistent with the terms of the arbitration agreement." (*Id.*) They argue that, because the Amended Complaint alleges that MCFC was a "premium member club" of USA Fencing and that Piraino acted as an agent of USA Fencing, and because "the arbitration provision at issue binds arbitration for claims made against any 'agent, attorney, referee, official, club member, individual member, committee member or volunteer of USA Fencing,'" all of the plaintiffs' claims against all of the defendants, including MCFC and Piraino, are subject to arbitration. (*Id.* at 2–3.)

In response to the Music City defendants' motion, the plaintiffs state that these defendants have failed to provide an independent basis for granting USA Fencing's motion and failed to establish whether they are claiming an independent right to enforce the arbitration agreement. The plaintiffs argue that, in any event, MCFC and Piraino have not presented any legal basis for independently enforcing the arbitration agreement and, even if they had such a right, "they have also waived that right by actively participating in this litigation since September 7, 2022, when they first responded to the Complaint, without asserting any right to arbitration." (Doc. No. 80, at 11 n.6.)

In their Reply, the Music City defendants assert that they could not have waived a right to arbitrate, because they did not become aware of the existence of the "2018–2019 Membership Waiver . . . entered into between [USA Fencing] and Judy Doe and Jane Doe" until September 28, 2023. (Doc. No. 85-1, Piraino Decl. ¶ 3–4; *see also id.* ¶ 4; Doc. No. 85, at 2.) They moved for arbitration within a month of learning about the existence of the agreement, as a result of which, they claim, no waiver of arbitration could have occurred. They do not address the plaintiffs'

contention that they have not made clear the legal basis for attempting to enforce the arbitration clause, other than by reiterating the agency allegations raised in their initial memorandum.

In their Sur-Reply, the plaintiffs assert that Piraino's claim not to have known about the Membership Waiver containing the arbitration agreement is "demonstrably false," insofar as his Answer, filed a month before Jane Doe's identity was disclosed, references both the Membership Waiver and arbitration agreement. (*See* Doc. No. 63 ¶¶ 8–10, 13 (contesting jurisdiction and venue in this court "to the extent that a valid and enforceable arbitration provision associated with Plaintiffs' claims was executed by Plaintiffs"); *id.* ¶ 238 (invoking "the benefits and protections of the Membership Waiver executed by Plaintiffs").)

The plaintiffs also argue that Piraino's assertion that he did not know about the Membership Waiver until September 28 is not credible and should not be deemed to create a material factual dispute, given that Piraino and MCFC were both admittedly members of USA Fencing and would have both signed similar documents and enforced USA Fencing's requirement that the athletes training with his club sign such agreements, as attested by Jane Doe in her Declaration. (*See* Doc. No. 92; *see also* Doc. No. 92-1, Jane Doe Decl. ¶¶ 5–7.)

Finally, they reiterate their argument that Piraino's denial of knowledge is irrelevant because he and MCFC still have not made it clear whether they simply agree that USA Fencing has the right to compel arbitration or whether they are claiming an independent right to compel arbitration of the claims against them. If the first, the plaintiffs assert that the Music City defendants' knowledge of the existence of an arbitration agreement is irrelevant. If the second, they contend that these defendants have not developed any legal theory to support their ability to enforce an agreement to which they are not a party, nor have they provided support for their

implicit contention that the arbitration provision covers the intentional sexual abuse claims that Jane Doe has brought against the Music City defendants.

The Music City defendants, too, filed a Reply to the plaintiffs' Sur-Reply, arguing, essentially, that the plaintiffs have no evidence that Piraino was actually aware of the fact that the plaintiffs had executed a Membership Waiver and never saw that Waiver until September 28, 2023 and, therefore, that the plaintiffs cannot establish waiver of the right to arbitrate.. (Doc. No. 95.)

### 2. *The Music City Defendants Waived Arbitration*

The plaintiffs are correct that the Music City defendants have not made entirely clear the legal basis for their demand for arbitration. Insofar as they seek merely to "join" USA Fencing's Motion to Compel Arbitration, the motion fails for the same reasons that USA Fencing's motion fails: USA Fencing waived its ability to enforce the arbitration clause.

However, the Music City defendants clearly seek arbitration of the claims against them as well. (*See* Doc. No. 75, at 1, 2 (moving the court to compel arbitration on the basis that the arbitration clause in the Membership Waiver "binds arbitration for claims made against any 'agent, attorney, referee, official, club member, individual member, committee member or volunteer of USA Fencing').) And their basis for doing so is that the plaintiffs allege in the Amended Complaint that MCFC was a USA Fencing "premium member club" and that "USA Fencing authorized and allowed Piraino to act as its agent." (*Id.* at 2 (quoting Doc. No. 36 ¶¶ 40, 54).)

The Membership Waiver attached to Piraino's Declaration provides that

> any controversy or claim arising from or relating to my membership or participation, or my minor child's membership or participation, in USA Fencing, including but not limited to any matter arising from or relating to. . . compliance with or violation of any rule, regulation, policy, practice, bylaw, statute or common law, of USA Fencing . . . , or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by any officer, director, employee, agent, attorney, referee, official, club member, individual member, committee member or volunteer of USA Fencing, including but not limited to any matter arising from or relating to allegations of

> damage to property or injury to person, shall to the fullest extent permitted by law
> be settled by arbitration . . . .

(Doc. No. 85-1, at 4.)

The question of whether a non-party to an arbitration agreement can enforce it is a question of state law. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). The Music City defendants have not addressed the question of whether they are intended third-party beneficiaries of the Membership Waiver and arbitration agreement under Tennessee law.

More to the point, as a USA Fencing agent and member, Piraino is charged with knowing (on his own behalf and on behalf of MCFC) that USA Fencing new and renewing members signed Membership Waivers and that Membership Waivers included arbitration clauses. Even if he was not privy to settlement communications, Piraino knew—because the plaintiffs alleged as much in their pleadings—that Jane Doe was a USA Fencing member. Piraino does not allege that he was unaware that USA Fencing members signed Membership Waivers. He just claims not to have seen the one that Jane Doe signed until September 28, 2023. That fact, however, did not prevent him from preserving the ability to arbitrate claims against him or MCFC, as established by the filing of Music City defendants' Answer on September 1, 2023—before Piraino had seen the Membership Waiver—invoking both the Membership Waiver and the arbitration clause. However, rather than preserving or invoking a right to arbitrate early in the proceedings, the Music City defendants filed a Motion to Dismiss and Motion to strike Portions of the Amended Complaint, as well as Motions to Join in the motions filed by USA Fencing. They did not raise the issue of arbitration until after the court denied (for all practical purposes) their Motion to Dismiss and Motion to Strike.

In sum, the court finds that the Music City defendants, like USA Fencing, waived their putative right to arbitrate by acting in a manner wholly inconsistent with that right, despite knowledge from the inception of this litigation of all of the information they needed to invoke that right.

## IV.     CONCLUSION

For the reasons set forth herein, the court will deny USA Fencing's Motion to Compel Arbitration and the Music City defendants' Joinder in that motion, construed as their own motion to compel arbitration.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge