IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, a minor, by her parents and next friends JOHN DOE and JUDY DOE, JOHN DOE, in his individual capacity, and JUDY DOE, in her individual capacity,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., and UNITED STATES FENCING ASSOCIATION,<br><br>Defendants. | Case No. 3:22-cv-00560<br>Judge Aleta A. Trauger |

**MEMORANDUM**

Before the court is a motion for partial summary judgment, styled as a "Motion for Summary Judgment as to [Plaintiffs'] Claims for Pre-Majority Medical Expenses" (Doc. No. 136), filed by defendants Robert Piraino and Music City Fencing Club, Inc. ("Music City Fencing") (collectively, the "moving defendants"). Defendant United States Fencing Association joins in the motion. (Doc. Nos. 142, 148.) For the reasons set forth herein, the motion will be granted in part and denied in part.

I.  **FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs Jane Doe, a minor at the time this lawsuit was filed, and her parents John Doe, and Judy Doe ("the parents"), initiated this action on July 27, 2022 against the moving defendants and the United States Fencing Association. (Doc. No. 1.) The Second Amended Complaint ("SAC"), now the operative pleading, alleges that Robert Piraino engaged in sexually inappropriate conduct with Jane Doe between 2019 and 2021 in Nashville, Tennessee, while he was Jane Doe's fencing coach and the owner, principal, and former head coach of Music City

Fencing. (Doc. No. 115 ¶¶ 5, 89–134.) Between 2019 and 2021, Jane Doe was between thirteen and fifteen years old. (*Id.* ¶¶ 90–91.)

On November 16, 2022, Piraino pleaded guilty to multiple counts relating to the sexual abuse of Jane Doe and another child, including (1) two counts of especially aggravated exploitation of a minor and (2) one count of sexual exploitation of a minor via electronic means. (*Id.* ¶ 133.) He was sentenced to 25 years in prison without parole. (*Id.*)

In addition to damages related specifically to the mental and emotional injuries allegedly sustained by Jane Doe as a result of Piraino's sexual abuse, the SAC seeks damages on behalf of the parents against Piraino and Music City Fencing to compensate them for Jane Doe's past and pre-majority medical expenses related to a shoulder injury. (*Id.* ¶¶ 139–41, 152–54, 163, 201–02, 215, 226, 233–34.) Regarding that injury, the SAC alleges that Piraino caused permanent damage to Jane Doe's shoulder by making her perform painful shoulder exercises during fencing practice, even though he knew that she was experiencing shoulder pain. More specifically, the plaintiffs allege that Piraino made "demands" upon Jane Doe, including that she send him videos of herself masturbating or "engaging in 'dirty talk'" and photos of herself in "sexually suggestive positions." (*Id.* ¶¶ 103–07.) When she complied with his demands, he rewarded her with gifts. (*Id.* ¶ 112.) However, when she did not comply, he punished her, as follows:

> 113. When Jane Doe did not comply with Piraino's demands, she was punished. If she refused to send a photo or video that Piraino requested, he would show up to the next fencing practice in a rage. Throughout practice, he would find pretextual reasons to single her out for harsh treatment and berate her in front of other students.
>
> 114. He would also physically punish her. Sometime during 2020, Jane Doe began experiencing pain in her shoulder during fencing activities. Piraino knew this and, during fencing practice, would make Jane Doe perform exercises to aggravate her shoulder, knowing that this caused her excruciating pain. Jane Doe believes that Piraino would do this in direct response to Jane Doe refusing one of his demands for photos and videos.

(*Id.* ¶¶ 113–14.) In the alternative, however, Jane Doe also alleges that, "regardless of whether Piraino was intentionally punishing Jane Doe for refusing to provide photos and videos, he knew that Jane Doe's shoulder was injured, knew that she had been seeing health care providers for her injury, and nevertheless continued to make her perform painful exercises that aggravated the injury." (*Id.* ¶ 114.) In other words, Jane Does alleges that *either* Piraino intentionally caused her pain to punish her for refusing his demands *or* he did not intend to exacerbate her injury or punish her but instead negligently caused exacerbation of her injury.

Jane Doe's intentional action theory is reflected in several of the causes of action asserted in the SAC, including her claims for assault and battery, sex trafficking, and forced labor, among others. (*See, e.g.*, *id.* ¶¶ 144 ("Piraino acted intentionally when he forced Jane Doe to perform painful shoulder exercises as punishment for her refusing to provide him with sexually explicit photos and videos."), 206, 218 ("Piraino violated [various federal statutes by] forcing Jane Doe to perform physical exercises that aggravated her injured shoulder . . . .").) Her alternative negligence theory is reflected in the SAC's "Count 3" for negligence, against both Piraino and Music City Fencing. (*See id.* ¶¶ 158–62 (asserting that Piraino and Music City Fencing had, and breached, a duty to "adopt, implement, and enforce reasonable policies and procedures to be followed in case a fencer was injured or was experiencing pain during fencing activities" and "failing to properly supervise her participation in fencing training and competition").)

It is undisputed that Jane Doe first injured her shoulder in 2019 or 2020 and that she and her parents learned no later than March 2021 that she had been diagnosed with shoulder instability and rotator cuff tendinitis, caused by overuse. (Judy Doe Dep., Doc. No. 150-13 at 199; Jane Doe

(*Id.* ¶¶ 113–14.) In the alternative, however, Jane Doe also alleges that, "regardless of whether Piraino was intentionally punishing Jane Doe for refusing to provide photos and videos, he knew that Jane Doe's shoulder was injured, knew that she had been seeing health care providers for her injury, and nevertheless continued to make her perform painful exercises that aggravated the injury." (*Id.* ¶ 114.) In other words, Jane Does alleges that *either* Piraino intentionally caused her pain to punish her for refusing his demands *or* he did not intend to exacerbate her injury or punish her but instead negligently caused exacerbation of her injury.

Jane Doe's intentional action theory is reflected in several of the causes of action asserted in the SAC, including her claims for assault and battery, sex trafficking, and forced labor, among others. (*See, e.g.*, *id.* ¶¶ 144 ("Piraino acted intentionally when he forced Jane Doe to perform painful shoulder exercises as punishment for her refusing to provide him with sexually explicit photos and videos."), 206, 218 ("Piraino violated [various federal statutes by] forcing Jane Doe to perform physical exercises that aggravated her injured shoulder . . . .").) Her alternative negligence theory is reflected in the SAC's "Count 3" for negligence, against both Piraino and Music City Fencing. (*See id.* ¶¶ 158–62 (asserting that Piraino and Music City Fencing had, and breached, a duty to "adopt, implement, and enforce reasonable policies and procedures to be followed in case a fencer was injured or was experiencing pain during fencing activities" and "failing to properly supervise her participation in fencing training and competition").)

It is undisputed that Jane Doe first injured her shoulder in 2019 or 2020 and that she and her parents learned no later than March 2021 that she had been diagnosed with shoulder instability and rotator cuff tendinitis, caused by overuse. (Judy Doe Dep., Doc. No. 150-13 at 199; Jane Doe

Dep., Doc. No. 150-7, 279–81; Elrod Dep., Doc. No. 150-5 at 51–52, 56–57.)[1]

As the plaintiffs argue, however, the moving defendants do not point to any evidence in the record from which a reasonable jury could conclude that the parents had reason to know or even suspect that Jane Doe's shoulder injury was "caused in whole or in part by Piraino's subjecting Jane Doe to harsh training exercises in retaliation for her refusal to provide Piraino with sexual photos and videos." (Doc. No. 157 at 2.) More specifically, the evidence indicates that the parents did not learn about the underlying inappropriate conduct until after Jane Doe disclosed it to her mental health therapist in July 2021. (Judy Doe Dep., Doc. No. 150-13 at 98, 183; John Doe Dep., Doc. No. 168 at 102; SAC ¶ 125.)

Piraino and Music City Fencing now seek partial summary judgment on the narrow issue of whether the parents' claim for Jane Doe's pre-majority medical expenses related to the shoulder injury is barred by the applicable one-year statute of limitations. They argue that Jane Doe does not have a personal claim for medical expenses and that her parents' claim accrued in March 2021, when the injury was diagnosed, and that the lawsuit was not filed until July 2022, outside the limitations period. (Doc. No. 138 at 2, 5.)

The plaintiffs respond that their claim based on Piraino's *intentional* conduct did not accrue until July 2021, when they discovered Piraino's abusive conduct after Jane Doe reported it to her therapist. They argue that the statute of limitations for that claim had not expired when they filed suit in July 2022. They acknowledge that the SAC also asserts a negligence claim against Piraino and Music City Fencing and that the "[t]he statute-of-limitations issue that Piraino and Music City Fencing have raised as to John and Judy Doe's claims for pre-majority medical expenses could

---

[1] The court refers exclusively to the CM/ECF pagination of these deposition transcripts, which diverges from the original pagination, due to the parties' inclusion of (unnecessary) cover pages.

come into play if the jury were to hold Piraino and Music City Fencing liable on this basis." (Doc. No. 157 at 2.) However, they also argue that the moving defendants "do not contend that this issue . . . is conducive to resolution on summary judgment." (*Id.* at 2–3.)

The moving defendants have filed a Reply brief (Doc. No. 163), arguing that the plaintiffs misapply Tennessee's discovery rule and that they were on notice no later than March 2021 that Jane Doe was suffering a shoulder injury due to overuse and overextension. (Doc. No. 163 at 2.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

The movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see also Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018). The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted). Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Generally, when both federal and state law claims are before a federal court, the federal court applies federal law to the plaintiff's federal claims and state substantive law to the plaintiffs'

state claims. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 737, 741 (6th Cir. 1999) (citations omitted). The accrual of a state cause of action and the application of the statute of limitations to a state common law claim are governed by state law. *Accord, e.g.*, *Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 944, 950 (E.D. Mich. 2021) (collecting cases distinguishing between the accrual of federal and state claims and applying state law to the accrual of state claims). The parties agree that Tennessee law applies here.

## III. DISCUSSION

Under Tennessee law, Jane Doe's parents are statutorily entitled to seek the recovery of expenses they incurred in obtaining medical treatment for Jane Doe in connection with her claimed injuries. *See* Tenn. Code Ann. § 20-1-105(a) ("The father and mother of a minor child have equal rights to maintain an action for the expenses . . . resulting from an injury to a minor child . . . living in the family[.]"); *see also Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 247 (Tenn. Ct. App. 1990) ("When a tort is committed against a child, the parents have a derivative cause of action for the . . . medical expenses resulting from the injury." (citation omitted)). The moving defendants do not dispute the parents' ability, as a legal matter, to pursue recovery of the costs of medical treatment for Jane Doe.

Instead, they seek summary judgment on the question of whether the statute of limitations had run for that claim by the time they filed suit. The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). The Tennessee Supreme Court has explained that "[a] defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012). The first of these—the length of the limitations period—is the most straightforward of the three elements, *id.*, and the parties here agree

that the parents' claim for medical damages is subject to the one-year statute of limitations for personal injuries set forth in Tenn. Code Ann. § 28-3-104(a)(1)(A). The plaintiffs do not contend that any equitable tolling doctrine applies, so the only relevant issue is the accrual date of the plaintiffs' claim(s).

"The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Redwing*, 363 S.W.3d at 457. Tennessee applies the "discovery rule" to the accrual of personal injury claims. *Id.* at 458. Over the years, the Tennessee Supreme Court has, in its own words, "refined the discovery rule to make clear that it include[s] not only the discovery of the injury but also the discovery of the source of the injury." *Id.* (citations omitted). Thus,

> [u]nder the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct. This latter circumstance is variously referred to as "constructive notice" or "inquiry notice." . . . [I]nquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed . . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run.

Id. at 459 (some alterations in original) (internal quotation marks and citations omitted). Generally, the question of whether a plaintiff exercised reasonable care and diligence in discovering an injury or wrong is a question of fact for the jury, unless there is no genuine issue of material fact as to whether a plaintiff knew of facts sufficient to put a reasonable person on notice that he suffered an injury as a result of wrongful conduct. *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995).

In ruling on the moving defendants' very similar Motion to Dismiss in 2023, the court determined that the factual allegations in the operative pleading did not "establish that the parents knew or reasonably should have known prior to Jane Doe's disclosure of her abuse to her psychotherapist that their daughter had suffered physical and emotional injuries as a result of wrongful conduct." *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 648 (M.D. Tenn. 2023). The only

new facts that have come to light since then are that the parents indisputably knew that the plaintiff was diagnosed with shoulder "instability" and rotator cuff tendinitis and were told that this was an overuse injury no later than March 2021, approximately one year and four months before the plaintiffs filed this lawsuit.

While this information clearly put the parents on notice that they potentially had a negligence claim against Piraino and Music City Fencing, nothing in the record suggests that it should have put them on inquiry notice of the existence of an intentional tort claim against Piraino based on his allegedly forcing Jane Doe to perform exercises he knew would aggravate a pre-existing injury for the purpose of causing her pain and to "punish" her for refusing his demands. The parents were not put on inquiry notice of the existence of an intentional tort as the "source of the injury" until they learned more generally about Piraino's sexual misconduct from Jane Doe's therapist, exactly one year before they filed suit. The moving defendants do not argue that *Jane Doe's* knowledge of the source of her injury should be imputed to her parents for purposes of the intentional tort claims. And while the Tennessee Supreme Court has made it clear that the discovery rule "does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of damages," the court finds that the question of whether the parents exercised reasonable care and diligence in discovering that Jane Doe's injury was intentionally inflicted is a question of fact for the jury.

On the other hand, it seems at this point to be undisputed that any negligence claim premised on Piraino's negligent coaching practices and Music City Fencing's negligent failure to adopt policies and procedures to be followed when an athlete was injured accrued more than one year before the plaintiffs filed suit. Because the negligence claim asserted in Count 3 of the SAC is time barred, the court will grant summary judgment as to that claim.

## IV. CONCLUSION

The moving defendants' motion for partial summary judgment on the issue of the parents' claim for Jane Doe's pre-majority medical expenses (Doc. No. 136) will be granted in part and denied in part. An appropriate Order is filed herewith.

 ALETA A. TRAUGER
 United States District Judge