## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, a minor, by her parents and next friends JOHN DOE and JUDY DOE, JOHN DOE, in his individual capacity, and JUDY DOE, in her individual capacity, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00560<br>Judge Aleta A. Trauger |
| ROBERT PIRAINO, MUSIC CITY FENCING CLUB, INC., and UNITED STATES FENCING ASSOCIATION, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM

Before the court is the motion for partial summary judgment, styled as a "Motion for Summary Judgment as to Plaintiffs' Claims for Violation of 18 U.S.C. § 1591(a), 18 U.S.C. § 1594(a), and 18 U.S.C. § 1589(a)" (Doc. No. 139), filed by defendant Music City Fencing Club, Inc. ("Music City Fencing" or the "moving defendant"). For the reasons set forth herein, the motion will be granted in part and denied in part.

### I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Jane Doe, a minor at the time this lawsuit was filed, and her parents John Doe, and Judy Doe ("the parents"), initiated this action on July 27, 2022 against Music City Fencing, Robert Piraino, and the United States Fencing Association. (Doc. No. 1.) The Second Amended Complaint ("SAC"), now the operative pleading, alleges that Robert Piraino engaged in sexually inappropriate conduct with Jane Doe between 2019 and 2021 in Nashville, Tennessee, while he was Jane Doe's fencing coach and the owner, principal, and head coach of Music City Fencing.

(Doc. No. 115 ¶¶ 5, 89–134.) On November 16, 2022, Piraino pleaded guilty to multiple counts relating to the sexual abuse of Jane Doe and another child, including (1) two counts of especially aggravated exploitation of a minor and (2) one count of sexual exploitation of a minor via electronic means. (*Id.* ¶ 133.) He was sentenced to 25 years in prison without parole. (*Id.*)

The plaintiffs allege in the SAC that Piraino was the "sole owner, officer, and director of Music City Fencing. He was responsible for the management of the company and made all decisions relating to finances, personnel, leases, equipment acquisitions, and policies and procedures governing the company's day-to-day operations[.]" (*Id.* ¶ 41.) Jane Doe began taking fencing lessons at Music City Fencing in July 2017, when she was 11 years old. (*Id.* ¶ 90.) Piraino began sexually grooming and exploiting Jane Doe in 2019, when she was 13, and this abuse continued until "sometime in early 2021," when she would have been fifteen years old. (*Id.* ¶¶ 93–122.) According to the SAC, the abuse consisted primarily of Piraino's making "demands" on Jane Doe, including that she send him videos of herself masturbating or "engaging in 'dirty talk'" and photos of herself in "sexually suggestive positions." (*Id.* ¶¶ 103–07.) When she complied with his demands, he rewarded her with gifts. (*Id.* ¶ 112.) When she did not, he would "punish" her, including by "mak[ing] [her] perform exercises to aggravate her shoulder," knowing that she was already experiencing pain in that shoulder during fencing activities and knowing that forcing her to do perform exercises with that shoulder "caused her excruciating pain." (*Id.* ¶ 114.) The plaintiffs also allege that Piraino distributed naked photos of Jane Doe online and made articles of her clothing available for sale online to other pedophiles. (*Id.* ¶¶ 128, 131.)

Although Music City Fencing does not include *any* facts outside the SAC in its Statement of Undisputed Material Facts in support of its motion, it asserts in the body of its supporting Memorandum that it is undisputed that Piraino never kissed Jane Doe, never had sexual intercourse

with her, and never touched her genitals. (Jane Doe Dep. 159, Doc. No. 150-7.)[1] While Jane Doe initially testified that Piraino had touched her breast, she later clarified that he touched her right breast over her chest protector during a fencing lesson, when he was trying to "fix [her] posture," so, in actuality, he "touched [her] on the chest protector over the breast area." (*Id.* at 159–60.)

Based on these and other factual allegations, the SAC sets forth claims against Music City Fencing, as relevant here, for purportedly "participat[ing] in a venture with Piraino," from which it knowingly benefited, all while knowing that Piraino was engaged in conduct that violated federal sex trafficking laws, including 15 U.S.C. §§ 1591(a) (which prohibits the sex trafficking of minors), 1594(a) (which criminalizes the attempt to violate § 1591 and other provisions), and 1589(a) (which criminalizes forced labor), for which the plaintiffs assert claims against both Piraino and Music City Fencing under 18 U.S.C. § 1595(a). (*Id.* ¶ 204–12, 217–24 (Counts 6 and 7).) The SAC also asserts that Music City Fencing is vicariously liable for Piraino's violations of 18 U.S.C. §§ 1591(a), 1594(a), and 1589(a). (*Id.* ¶¶ 214, 225.)

Music City Fencing (but not Piraino) seeks summary judgment on the federal sex trafficking and forced labor claims, arguing that (1) the undisputed facts show that it did not participate in a "venture" with Piraino, for purposes of all of the § 1595(a) claims, and (2) Piraino did not engage in sex trafficking as to Jane Doe, as defined in § 1591(a), because he never engaged in a "sex act" with her, as a result of which Music City Fencing cannot be liable for sex trafficking under any theory. (Doc. No. 141.)

The plaintiffs respond that this court has already held that the plaintiffs adequately alleged that Music City Fencing was engaged in a venture with Piraino and, further, that Jane Doe does

---

[1] The deposition transcript in the record contains no original pagination. The court therefore cites the CM/ECF-assigned pagination only.

not have to prove that Piraino actually engaged in a sex act with Jane Doe—she need only prove that he "*intended* to engage in a commercial sex act with her." (Doc. No. 159 at 4.) In its Reply, Music City Fencing relies on this court's opinion in *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2024 WL 4993391, at *16 (M.D. Tenn. Dec. 5, 2024), to reiterate its argument that "a single actor is not a 'venture' under the statute." (Doc. No. 165 at 2.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

The court already denied Music City Fencing's Rule 12(b)(6) motion to dismiss the sex trafficking and forced labor claims against it in 2023. Its present motion for partial summary judgment on the same issue, which relies entirely on the factual allegations set forth in the SAC, brings little in the way of new facts to the table, though it attempts to refocus part of its argument and cites more recent caselaw. As discussed below, the court finds the new arguments to be partially persuasive, at least with respect to the issue of whether the plaintiffs allege that Piraino engaged in a commercial sex act with Jane Doe.

### A.     Statutory Background

Congress initially passed the Trafficking Victims Protection Act of 2000 ("TVPA") "[t]o combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude, to reauthorize certain Federal programs to prevent violence against women, and for other purposes." Victims of Trafficking and Violence Protection Act of 2000, PL 106–386 (Division A), Oct. 28, 2000, 114 Stat 1464. The legislation created criminal offenses for sex trafficking and forced labor. 18 U.S.C. §§ 1591(a), 1589(a). Sex trafficking, as relevant here, is defined by the statute to include the knowing enticement or solicitation of a person under the age of 18 years to "engage in a commercial sex act." *Id.* § 1591(a). Forced labor is defined to include obtaining the labor or services of a person by means of force or threats of force and by means of serious harm or threats of serious harm. *Id.* § 1589(a)(1)–(2).

In 2003, Congress enacted the Trafficking Victims Protection Reauthorization Act ("TVPRA") to provide a civil remedy to victims of violations of the TVPA, now codified at 18 U.S.C. § 1595. The civil remedy statute states in relevant part:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (effective April 11, 2018 to January 4, 2023).[2] Thus, under the TVPRA, a victim of sex trafficking or forced labor under the TVPA may bring (a) a direct civil claim against the perpetrator of her trafficking and (b) a "beneficiary" civil claim against "whoever knowingly

---

[2] Congress has amended the statute several times since its initial passage in 2003, including minor amendments in 2023 that are not material to the plaintiffs' claims. The court cites herein the version of § 1595 in effect before the 2023 amendments.

benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPA]." 18 U.S.C. § 1595(a). To prove a claim for beneficiary liability under the TVPRA, a plaintiff must show that the defendant " (1) 'knowingly benefit[ted] financially or by receiving anything of value' (2) from participation in a venture (3) that [it] 'knew or should have known has engaged in' sex trafficking under § 1591." *Ramsbottom*, 2024 WL 4993391, at *16 (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020)); *see also Powell v. W. Express, Inc.*, No. 3:24-cv-1315, 2025 WL 2306949, at *4 (M.D. Tenn. Aug. 11, 2025) (Crenshaw, J.) (stating that "venture liability" requires a showing that "(1) [the defendant] was part of a 'venture,'(2) [the defendant] knowingly benefitted from participation in the venture; and (3) [the defendant] knew or should have known that the venture would violate § 1591(a)(1)" (citing *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 797 (S.D. Ohio 2024)).

### B.      Whether Piraino Engaged in a "Sex Act" with Jane Doe

Music City Fencing's Motion to Dismiss did not focus on—and effectively conceded— this element for purposes of that motion, so the court did not address it, other than to state in passing that the plaintiffs had adequately pleaded this element when they alleged that Piraino "induced Jane Doe to engage in 'commercial sex acts' . . . when he gave her money and other things of value in exchange for her providing him with sexually explicit images." *Doe*, 688 F. Supp. 3d at 649 n.7 (citing Doc. No. 36 ¶¶ 97–99, 113, 198). Music City Fencing now argues that it is undisputed that Piraino did not actually engage in any "sex act" with Jane Doe, citing the portions of Jane Doe's deposition testimony referenced above.

Section 1591(a), in relevant part, makes it a crime for any person to "knowingly" "entice[]" or "solicit[] by any means a person," while "knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). The term

"commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." *Id.* § 1591(e)(3). The statute does not define the term "sex act," so courts give it its ordinarily understood meaning. For instance, as Judge Crenshaw of this court has held:

> While the statute attempts to define what a "commercial sex act" is, it does not explain what qualifies as a "sex act." The plain meaning of sex act can be found in the dictionary: (1) "a sex act is an act performed with another for sexual gratification"; and (2) "a sex act is sexual relations, usually involv[ing] the touching of another's breast, vagina, penis, or anus."

*Powell*, 2025 WL 2306949, at *6 (first quoting Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sexact; and then quoting Sex Act, Black's Law Dictionary (10th Ed.)); *accord, e.g.*, *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 770 (C.D. Cal. 2024) (relying on the "plain and ordinary meaning" of "sex act"); *Ardolf v. Weber*, 332 F.R.D. 467, 477 (S.D.N.Y. 2019) (same).

Courts also generally agree that the statute, as indicated by its use of the terms "entice" and "solicit," does not require that a commercial sex act occur; instead, the perpetrator must simply intend that a commercial sex act will occur. *See, e.g.*, *United States v. Gatlin*, 90 F.4th 1050, 1061 (11th Cir. 2024) ("[C]riminal liability under § 1591 is not conditioned on the actual occurrence of any commercial sex act." (citation omitted)), *cert. denied sub nom. Gatlin v. United States*, 145 S. Ct. 10659 (2025); *United States v. Hornbuckle*, 784 F.3d 549, 553 (9th Cir. 2015) ("Case law makes clear that 'commission of a sex act or sexual contact' is not an element of a conviction under 18 U.S.C. § 1591."). Rather, as the Ninth Circuit has explained in the context of a § 1591(a) appeal:

> When an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act. What the statute requires is that the defendant know in the sense of being aware of an established *modus operandi* that will in the future cause a person to engage in prostitution.

*United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).

In this case, Jane Doe testified that Piraino did not touch her sexually, except for touching her on the chest protector over the "breast area" in the course of a fencing lesson. (Doc. No. 150-7 at 159–60.) He also touched her inner thighs and buttocks during fencing lessons when he was "fixing [her] lunge or fixing [her] posture," always when other people, including at least one of Jane Doe's parents, were present. (*Id.* at 161–62.) Otherwise, Jane Doe testified that Piraino "tried to get [her] to" masturbate him (give him a "hand job") during summer training camp "two or three times," and he also told her he wanted to have "threesomes" with her and other members of the fencing club or other coaches. (Doc. No. 150-7 at 151, 154, 155.) Jane Doe did not acquiesce to these solicitations. She also did not state in her deposition testimony that Piraino's attempts to get her to give him a "hand job" during summer camp or to engage in a threesome with him were tied to gifts or anything of value, and she did not testify that Piraino had in any sense put in place a "*modus operandi* that [would] in the future cause [her] to engage in a [sex act]." *Todd*, 627 F.3d at 334. More specifically, she does not allege that she was ever alone with Piraino or placed in a situation where sex acts could occur.

Jane Doe testified specifically that Piraino agreed to help her write a scholarship letter for USA Fencing in exchange for her sending him a photo of herself in a bikini sometime in the spring or summer of 2019. (Doc. No. 150-7 at 136, 149–50; *see also* Doc. No. 155-12, Jane Doe Decl. ¶ 2.) This was the first time she sent him a photo of herself. (Doc. No. 150-7 at 135–36.) She also

testified that Piraino gave her gifts of clothing, fencing equipment,[3] and a prepaid credit card "in exchange for" her sending him "photos and videos" of herself. (Doc. No. 150-7 at 123–24, 145.)[4] Piraino gave her items of clothing because he "wanted to see [her] in them." (*Id.* at 125.)

As set forth in the SAC, the plaintiffs allege that Piraino violated § 1591(a) (and § 1594(a), which criminalizes attempt to violate § 1591(a)) by:

> (a) Recruiting, enticing, and soliciting Jane Doe to participate in an arrangement under which Piraino would provide Jane Doe scholarships, gift cards, clothes, money, and other things of value for *photos and videos of her engaging in sex acts*;
> (b) Recruiting, enticing, and soliciting Jane Doe to participate in an arrangement under which Piraino would sell her *photos and videos* to child predators online . . . .

(SAC ¶ 206 (emphasis added).)[5] In other words, both in the SAC and in Jane Doe's testimony, the commercial element of Piraino's interactions with Jane Doe is explicitly tied to her sending photos and videos of herself in sexually suggestive positions. While sending Piraino a nude or partially nude photograph or video of herself may qualify as sending him child pornography, it is not a sex

---

[3] Judy Doe denied that Piraino ever purchased fencing gear for Jane Doe. (Judy Doe Dep., Doc. No. 150-13 at 110.)

[4] Piraino did other reprehensible things, including getting Jane Doe to leave her sweaty socks in the fencing locker room, after which he would send her videos of himself masturbating into her socks or "sell [them] on the black market." (Doc. No. 150-7 at 138,144, 157.) He sent her videos of himself having sex with other girls. (*Id.* at 148.) He purportedly "tried to date her" and told her he wanted to marry her. (*Id.* at 156.) The plaintiffs do not allege that these actions constitute "sex acts."

[5] The SAC also alleges that Piraino violated § 1591(a) by "[t]elling Jane Doe that when she turned 16, she could come to his apartment and have sex with him, . . . with the understanding and explicit representation that he would compensate her for sex." (SAC ¶ 206.) Aside from the fact that Jane Doe did not testify about these statements in her deposition, even when asked whether there was anything else she wanted to say about her relationship with him (Doc. No. 150-7 at 284–85), Piraino's telling Jane Doe that he wanted to have sex with her at some time in the future, after she turned sixteen, and that he would "compensate" her for it, is too vague and inchoate to establish an "intent" or attempt to engage in a commercial sex act with her.

act.[6] Touching her in the "breast area" on protective gear worn over her athletic clothing during a fencing lesson in order to correct her posture also does not qualify as a sex act.

The plaintiffs do not, at this juncture, argue to the contrary. Instead, in response to Music City Fencing's motion, they argue that there is evidence in the record that Piraino "*intended* to engage in a commercial sex act" with Jane Doe. (Doc. No. 159 at 4.) The evidence they point to includes statements by Jane Doe that Piraino "tri[ed] to get" her to perform sex acts on him; statements by Piraino to others that he intended to have sex with Jane Doe; and the fact that these statements were "made in a context where Piraino was providing things of value" to "coerce Jane Doe into complying with his demands." (*Id.* at 5.)

The evidence the plaintiffs cite includes an excerpt of the transcript from a hearing in the proceedings against Piraino in the Criminal Court for Davidson County, Tennessee, on the state's Motion to Increase/Revoke/Alter Bail. (Doc. No. 167 at 1.) In this excerpt, a detective testified about an apparently intercepted conversation between Piraino and another pedophile (or someone posing as a pedophile) in which Piraino claimed that he had a fifteen-year-old student, presumably referring to Jane Doe, with whom he was "planning to hook up in the locker room." (*Id.* at 5.)

Even assuming that Piraino, in fact, was "planning to hook up with Jane Doe," Jane Doe did not testify that he tried to induce her to have sexual intercourse with him. She testified only that Piraino "was trying to get her to" give him a "hand job" during a summer training camp that took place either the summer after eighth grade or the summer after her freshman year in high school. (Doc. No. 150-7 at 151, 122.) Soliciting a "hand job" would clearly qualify as soliciting a sex act, but the details Jane Doe provided regarding that inducement are thin. As set forth above,

---

[6] Indeed, the plaintiffs bring a separate claim against Piraino under 18 U.S.C. § 2251(a) for enticing or coercing Jane Doe to produce photos and videos of herself engaged in sexually explicit conduct. (SAC ¶ 231.)

she did not testify that Piraino effected a "modus operandi that [would] in the future cause [her] to engage in a [sex act]," *Todd*, 627 F.3d at 334, and she does not allege that she was ever alone with Piraino or in a situation where sex acts could occur. Under these circumstances, it seems unlikely that her testimony would persuade a jury Piraino attempted to induce her to engage in a sex act. But even if it did, Jane Doe did not testify or even imply that Piraino offered or tried to give her gifts or anything of value in exchange for masturbating him. Instead, as set forth above, the gifts he gave her were explicitly tied to her sending him photos and videos of herself, which is not a sex act.

The court therefore finds, upon closer look, that the evidence in the record is insufficient to permit a rational jury to conclude that Piraino knowingly enticed or solicited Jane Doe, when she was underage, to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a), or attempted to do so, in violation of § 1594(a). As a result, the plaintiffs cannot prove that Piraino engaged in sex trafficking in violation of § 1591(a) or 1594(a). Because Piraino did not engage in sex trafficking as defined by the statute, Music City Fencing cannot be vicariously liable or liable as a beneficiary under § 1595(a) for participating in a venture that it knew or should have known had engaged in sex trafficking. Music City Fencing is entitled to summary judgment on Count 6 of the SAC.[7]

### C. Whether Music City Fencing Participated in a "Venture"

Under 18 U.S.C. § 1589(a),

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means–

---

[7] Piraino did not join in Music City Fencing's motion for partial summary judgment on the sex trafficking claim, but the court's conclusion clearly implicates the claim against Piraino as well.

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

commits the crime of forced labor. As set forth above, a victim of § 1589(a) may bring a civil action against the perpetrator "or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter," which includes § 1589. 18 U.S.C. § 1595(a).

Count 7 of the SAC asserts that Piraino violated 18 U.S.C. § 1589(a) "by forcing Jane Doe to perform physical exercises that aggravated her injured shoulder when she did not agree to provide sexually explicit photos and videos in exchange for gift cards, clothes, money, and other things of value" and that Music City Fencing is liable under § 1595(a) because it "participated in a venture with Piraino" from which it knowingly benefitted, while also knowing that Piraino was engaging in conduct that violated § 1589(a). (SAC ¶¶ 218, 221–23.)

Setting aside the question of whether Piraino's conduct as alleged falls within the scope of the forced labor provision, which is a bit of a stretch,[8] Music City Fencing argues that it cannot be

---

[8] Music City Fencing does not challenge the forced labor element of the forced labor claim, but the court observes that the plaintiffs' forced labor theory is murky at best. As the plaintiffs allege it, forcing Jane Doe to perform painful exercises was not intended to induce her to provide Piraino photos and videos (presumably the "labor" in question, another issue the parties do not address) but as punishment for *not* providing photos and videos on demand (in exchange for gifts). It also does not appear from the facts that the *threat* of requiring her to perform painful shoulder exercises (which may or may not qualify as a "threat[] of serious harm" under § 1589(a)) induced or was intended to induce Jane Doe to provide the photos and videos. Jane Doe's deposition

---

liable because it did not engage in a "venture" with Piraino. Its position is, essentially, that Piraino acted alone, and that a person "acting alone . . . is not a venture." (Doc. No. 141 at 9.)

The Sixth Circuit has provided no guidance on this question, and the district courts within this circuit and elsewhere are "all over the map on the meaning" of the terms used to define beneficiary liability based on participation in a "venture" under § 1595(a). *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). But those federal appellate courts that have considered the issue have held that, in the civil context, the term "venture," as required for "participation in a venture," simply requires "taking part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 726; *accord G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (agreeing with the Eleventh Circuit that "the alleged venture can be a 'commercial venture[]' like running or expanding a business"); *L.M.H. v. Red Roof Inns*, No. 2:24-CV-1823, 2025 WL 961720, at *13 (S.D. Ohio Mar. 31, 2025) ("[B]oth the Eleventh and Seventh Circuits have recognized that the relevant 'venture' under Section 1595 need not be 'specifically a sex trafficking venture' and can instead be a 'commercial venture' like running or expanding a business that facilitates sex trafficking").

Here, Piraino and Music City Fencing were engaged in a "venture": together, they operated Music City Fencing Club, a venture that involved promoting, teaching, and coaching the sport of fencing, from which they both presumably benefited by generating a profit. (*See* SAC ¶¶ 44, 49.)

---

testimony contains essentially no discussion of the facts that would support her forced labor claim, aside from Jane Doe's brief statement that her mother was "concerned as to why [Piraino] was specifically making [her] do exercises that targeted [her] shoulder, knowing [she] was already in pain" and that her mother asked Piraino about it (in Jane Doe's presence) several times. (Doc. No. 150-7 at 111.) Jane Doe herself did not remember "express[ing] any concerns to Mr. Piraino about her workouts," but she did note that, once she stopped fencing altogether due to shoulder pain, she was able to cut off communications with him because he "couldn't hold power over [her] anymore while [she] was training since [she] wasn't training with him anymore." (*Id.* at 112, 164–65.)

Music City Fencing does not argue that an entity cannot be engaged in a "venture" with its agent/employee, and, in any event, those courts that have addressed the issue have found that it can. *See, e.g.*, *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 4204906, at *6 (E.D.N.C. Sept. 16, 2024) (recognizing that "a corporation cannot form an enterprise with its own agents or employees," for purposes of RICO liability, but holding that "Congress elected to write RICO and the TVPRA differently" and declining to apply the same standard in the TVPRA context). Music City Fencing does not argue that an entity cannot be a "person" subject to liability under the TVPRA, and many courts have found that entities qualify as such persons. *See, e.g.*, *Doe v. JRD P'ship*, No. 3:23-cv-00928, 2025 WL 2637668, at *4 n.6 (M.D. Tenn. Sept. 12, 2025) (Richardson, J.) (finding that "legal entities . . . can be liable [as] 'persons" under Section 1595(a)" (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019))).

Moreover, it is well established that a corporation's existence, even that of a closely held corporation, "is separate and distinct from that of its owner." *Farmers & Merchants State Bank v. Direct Scaffold Servs. Co.*, 170 F. Supp. 3d 1079, 1084 (M.D. Tenn. 2016) (Sharp, J.) (citing *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth., Inc.*, 970 F.2d 199, 202 (6th Cir. 1992) (construing Tennessee law)); *see also Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 733 (6th Cir. 2003) ("Generally, a corporation is considered an entity separate and distinct from its owners or shareholders."). "A corporation may not selectively disregard the corporate veil that separates its legal identity from that of its owner." *Farmers & Merchants*, 170 F. Supp. 3d at 1084; *see also Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946) ("One who has

created a corporate arrangement, chosen as a means of carrying out his business purposes, does not have the choice of disregarding the corporate entity in order to avoid [its] obligations.").[9]

In other words, while it is true that one individual acting alone is not a "venture," the plaintiffs' beneficiary theory of liability against Music City Fencing is based on the fact that Piraino and Music City Fencing, together, operated a venture—a proposition that Music City Fencing actually does not dispute. Further, the court is not persuaded by Judge Crenshaw's decision in *Powell v. Western Express, Inc.*, which imported the definition of a "sex trafficking venture" applied by the Sixth Circuit in *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), an unreported criminal case, into a civil case under § 1595(a). In *Powell*, the court reasoned that, "[b]ecause § 1595 contains no scienter requirement for 'venture,' one is left to assume that plaintiffs must simply prove the existence of a venture, which the Sixth Circuit defines as two or more people who engage in sex trafficking together." *Powell*, 2025 WL 2306949, at *5 (citing *Afyare*, 632 F. App'x at 285). The court held that, because the plaintiff's supervisor alone was alleged to have engaged in sex trafficking, the plaintiff failed to plead the existence of a sex trafficking "venture." *See id.* ("No one else agreed to engage in sex-trafficking. Mr. Lynch—acting alone and motivated by his personal sexual desires—is not a venture within the meaning of §§ 1591(a)(2) and 1595(a).").

---

[9] Generally, courts disregard the corporate form—pierce the "corporate veil"—only "in the interest of public convenience, fairness and equity." *Flynn*, 95 F. App'x at 733. Thus, "when a corporation exists solely for the purpose of serving as an alter ego for its owners, 'the courts will not permit themselves to be blinded or deceived by mere forms or law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.'" *Id.* at 733–34 (quoting *Quinn v. Butz*, 510 F.2d 743, 758 (D.C. Cir. 1975)). In this situation, individuals may become liable for acts otherwise attributable to a corporation. But veil-piercing is not raised as an issue here.

In reaching that holding, Judge Crenshaw recognized that his view was "at odds" with that of other courts—including the undersigned—that have held that a "'venture' can be any association of people and that only one member of that association must engage in a sex trafficking act." *Id.* (collecting cases). He nonetheless found that these other decisions conflicted with the Sixth Circuit's decision in *Afyare* and that there was no good reason to apply different definitions in the civil context as opposed to the criminal context. *Id.*

Judge Crenshaw may well be correct that the Sixth Circuit will ultimately apply its holding in *Afyare* to a case arising under the TVPRA. This court, however, remains persuaded by those opinions, discussed above, finding that the civil context imposes a different and less demanding standard and that there are good reasons for distinguishing between participation in a "sex-trafficking venture," for purposes of criminal liability, and participation in a "venture" that happened to engage in sex trafficking, for purposes of civil liability. As this court already stated in addressing the virtually identical argument raised in support of Music City Fencing's Motion to Dismiss,

> *Afyare* was a criminal case, and the court in that case defined the term "venture" for purposes of § 1591(a)(2). *Afyare*, 632 F. App'x at 286. Criminal liability requires knowing participation in a sex-trafficking venture. *See id.* ("We . . . find that § 1591(a)(2) targets those who participate in sex trafficking."). Civil liability under § 1595(a) requires simply knowingly benefiting from participation in any "venture"—not necessarily a sex-trafficking venture—that the defendant "knew or should have known" has engaged in an act in violation of the TVPA.

*Doe*, 688 F. Supp. 3d at 654 (M.D. Tenn. 2023) (citing *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 188 (E.D. Pa. 2020)); *accord Doe #1*, 21 F.4th at 724 (declining to incorporate into § 1595 the definition of "participation in a venture" in § 1591); *G.G.*, 76 F.4th at 554 (declining to "import Section 1591's definition [of 'venture'] into Section 1595").

Music City Fencing's invocation of this court's more recent decision in *Ramsbottom v. Ashton* is also unavailing. In that case, the claims against all entity defendants had been dismissed

at the motion to dismiss stage, for various reasons. The sole remaining defendant, an individual, moved to dismiss the "beneficiary" liability claims against him under § 1595(a) on the basis that the plaintiffs failed to prove the existence of a venture. In addressing that argument, the court first recognized that "sections 1591 and 1595 differ from one another in that . . . § 1591 is relegated to sex-trafficking ventures while § 1595 refers to any kind of venture." *Ramsbottom*, 2024 WL 4993391, at *16. The court nonetheless held that, "[b]ecause the plaintiffs have not presented any facts [showing] that any others knew about or were involved in or facilitated [the defendant's] alleged sex trafficking of them, they have not alleged the existence of a 'venture' that engaged in sex trafficking." *Id.* That holding does not apply here. Obviously, Music City Fencing remains a defendant, and, as set forth above, the evidence establishes that it was involved in a business venture with Piraino. Further, because "knowledge of a corporate officer or agent acting within the scope of his authority is attributable to the corporation," *Frank v. Dana Corp.*, 646 F.3d 954, 963 (6th Cir. 2011) (citation omitted), Piraino's knowledge of his own alleged involvement in "forced labor" is attributable to Music City Fencing as a matter of law.

In sum, Music City Fencing's only argument in support of dismissal of the beneficiary liability forced labor claim against it is that the SAC fails to allege the existence of a venture.[10] The court, having already rejected that argument once, rejects it again. The motion for partial summary judgment for Music City Fencing on Count 7 of the SAC will be denied.

## IV. CONCLUSION

For the reasons set forth herein, Music City Fencing's motion for partial summary judgment will be granted in part and denied in part. Music City Fencing is entitled to summary

---

[10] Again, the court expresses no opinion as to whether the plaintiffs will be able to prove that Piraino engaged in forced labor as defined by § 1589(a).

judgment on Count 6 of the SAC, based on the court's finding that the plaintiffs have failed to establish that Piraino engaged in a commercial sex act with Jane Doe, as that term is defined in § 1591. That count will be dismissed as to Music City Fencing. Summary judgment will be denied as to Count 7, as there is at least a question of fact as to whether Music City Fencing and Piraino were engaged in a venture, for purposes of § 1595(a).

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge